# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fort Smith Division

*US DISTRICT COURT WESTERN DIST ARKANSAS FILED FEB 04 2020 DOUGLAS F. YOUNG, Clerk By ___ Deputy Clerk*

In the Matter of the Search of

One (1) black colored LG cellular phone )
model: LML212VL; IMEI: 355987104806731; )
One (1) black colored Samsung cellular phone )
model: SM-J26071; IMEI: 356212106501068; )
One (1) black colored Alcatel cellular phone )
model: A405DL; FCC ID: 2ACCJN023 )
misc: 015551000731716; )
One (1) yellow colored iPhone XR )

Case No. 2:20cm 10

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   X   evidence of a crime;

   X   contraband, fruits of crime, or other items illegally possessed;

   X   property designed for use, intended for use, or used in committing a crime;

   ☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21 U.S.C. § 841(a)(1) Possession with intent to distribute cocaine and Title 21 U.S.C. § 846 Conspiracy to possess with intent to distribute controlled substances.

The application is based on these facts:   **See Affidavit of DEA Special Agent Michael Brooks**

   X Continued on the attached sheet.

   ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*M. Brooks*
Applicant's signature

Michael Brooks, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/4/20

*Mark E. Ford*
Judge's signature

City and state:   Fort Smith, Arkansas          Mark E. Ford, United States Magistrate Judge
                                                 *Printed name and title*

# AFFIDAVIT

I, Michael Brooks, a Special Agent with the Drug Enforcement Administration (DEA) being duly sworn, state the following:

## A.   INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA) currently assigned to the Fort Smith, Arkansas, Post of Duty. I am a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C); that is, I am a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I have been a Special Agent with the DEA since October 2019. Prior to my employment with the DEA, I was employed by the North Little Rock, Arkansas, Police Department since 2007. During my employment with the North Little Rock Police Department, I was assigned to the DEA Little Rock District Office as a Task Force Officer (TFO) from June 2014 until June 2019. Prior to my assignment as a DEA TFO, I was assigned to the North Little Rock Police Department's Narcotics Unit from December 2009 until June 2014. I have been involved in numerous aspects of narcotics investigations, including, but not limited to, conducting controlled purchases of narcotics; utilizing confidential sources; debriefing defendants, witnesses, and informants; conducting surveillance and undercover operations; preparing and executing search warrants; analyzing documentary and physical evidence, analyzing phone toll records; and conducting wiretap investigations. My current responsibilities are conducting investigations of drug-trafficking offenses.

3. Because of my personal observations and participation in this investigation and information provided to me by other agents and officers, I am familiar with the facts and

circumstances of this investigation. This Affidavit is intended to show only that there is sufficient probable cause for the search warrant, and does not set forth all of my knowledge about this matter.

## B.    BASIS FOR FACTS CONTAINED IN THIS AFFIDAVIT

4.    This Affidavit is based on facts that I have learned from my own personal knowledge and on information provided to me by other law enforcement officials. Since this Affidavit is for the limited purpose of establishing probable cause to support a search warrant for One (1) black colored LG cellular telephone, model: LML212VL; IMEI: 355987104806731 **(Cellular Telephone #1)**, One (1) black colored Samsung cellular telephone, model: SM-J26071; IMEI: 356212106501068 **(Cellular Telephone #2)**, One (1) black colored Alcatel cellular telephone, model: A405DL; FCC ID: 2ACCJN023; misc: 015551000731716 **(Cellular Telephone #3)**, and One (1) yellow colored iPhone XR **(Cellular Telephone #4),** it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and events described in this Affidavit.

5.    Based upon my training and experience in drug trafficking investigations, I know that persons who engage in the trafficking of illegal narcotics often utilize cellular telephones to facilitate the purchase of, transportation of, and/or distribution of illegal narcotics. Drug traffickers frequently utilize cellular telephones to send and receive phone calls, text messages, and voice mails to and from their source(s) of supply and customers. In addition, they store contact information, e.g. telephone numbers, emails and addresses, for their source(s) of supply and customers in their cellular telephones. Drug traffickers also use cellular telephones to take and send photographs of the drugs and drug proceeds gained from their drug trafficking activities. Thus, cellular telephones may retain names, text messages, voice mail messages, photographs, videos, contact numbers for/of others involved in the distribution of illegal narcotics, contact lists,

and call log information, until manually deleted or deleted according to the cellular phone's settings. Furthermore, it has been my experience that drug traffickers utilize multiple cellular telephones to disguise criminal activity, and avoid detection from law enforcement, and utilize inexpensive pre-paid cellular telephones that requires no personal (subscriber) information upon activation.

6. This Affidavit is submitted to demonstrate probable cause exists to authorize a warrant to search four (4) cellular telephones, as described in more particular detail in Attachment A, for evidence of violations for Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Cocaine) and Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Controlled Substance).

C.  **FACTS AND CIRCUMSTANCES IN SUPPORT OF PROBABLE CAUSE**

7. On February 3, 2020, at approximately 8:30 a.m., Arkansas State Police (ASP) Trooper John Bass conducted a traffic stop on a white colored 2012 Honda Accord, bearing Connecticut registration AC68243, traveling eastbound on Interstate-40 at the 24E mile marker for traffic violations described as: *"Following too closely"* and *"Improper lane change/usage."* Trooper Bass identified the two (2) occupants of the vehicle as the driver, ROBERT LEE GRANT ("GRANT"), and the front passenger, DESTINY LELIA MARIE PINA ("PINA"). The registered owner of the vehicle, SHINEKA L TRIMMER of 76 Orange Street, #3FL, Hartford, CT 06106, was not present.

8. During Trooper Bass' initial contact with GRANT and PINA, GRANT informed Trooper Bass that he and PINA were returning to Connecticut from Los Angeles, California. While conducting an ACIC/NCIC name and criminal history check of both GRANT and PINA, Trooper Bass discovered GRANT had previously been arrested in 2000 for transporting cocaine.

Trooper Bass discovered GRANT had been arrested for other drug-related offenses. Trooper Bass briefly questioned GRANT about GRANT'S itinerary while GRANT was seated inside Trooper Bass' patrol vehicle. GRANT stated he and PINA had travelled separately to Los Angeles, California to visit the Kobe Bryant memorial. GRANT informed Trooper Bass that he had arrived in Los Angeles, California 3-5 days prior to PINA's arrival in Los Angeles, California. GRANT stated PINA arrived to Los Angeles, California on an airline flight from Connecticut. GRANT stated once PINA arrived in Los Angeles, California, he picked her up at the airport. GRANT informed Trooper Bass he and PINA were both travelling back to Connecticut. Trooper Bass stated that each time GRANT would answer one of his questions, GRANT would begin breathing irregularly and was noticeably shaking. Trooper Bass stated that based on his training and experiences specialized in interstate drug interdiction, several indicators indicative of deceit commonly associated with illegal activity; specifically, drug trafficking, were present in the description of travel activities of GRANT and PINA, as well as the response behaviors displayed by GRANT.

9. Trooper Bass then asked GRANT for consent to search the white colored 2012 Honda Accord. GRANT refused. Trooper Bass then requested ASP K9 Trooper Mike Bowman conduct a K9 sniff of the white colored 2012 Honda Accord, utilizing his K9 partner "Ringo." ASP K9 "Ringo" is currently certified as a multi-purpose canine through the *Polizeispuerhundpruefung* (PSP). ASP K9 "Ringo" is trained to alert to the odors of marijuana, methamphetamine, heroin, cocaine, and ecstasy.

10. Once PINA exited the front passenger seat of the white colored 2012 Honda Accord, ASP K9 Trooper Bowman presented the white colored 2012 Honda Accord to his K9 partner "Ringo." As K9 "Ringo" was conducting his sniff of the white colored 2012 Honda

Accord, ASP K9 Trooper Bowman observed a change in K9 "Ringo's" behavior at the front passenger door. ASP K9 Trooper Bowman stated K9 "Ringo's" change of behavior is indicative of a positive alert for the presence of illegal drugs being emitted from the white colored 2012 Honda Accord.

11. Immediately afterwards, a probable cause search of the white colored 2012 Honda Accord was conducted by ASP Trooper Bass, ASP K9 Trooper Bowman, and ASP Trooper Matt Price. During the search, ASP K9 Trooper Bowman located **Cellular Telephone #1, Cellular Telephone #2, Cellular Telephone #3,** and **Cellular Telephone #4** in the cup holders of the vehicle's center console. ASP Trooper Bass then observed a metal hinge with fresh weld mark attached to a portion of the center console of the vehicle near the radio dashboard. Based on ASP Trooper Bass' training and experience specialized in interstate drug interdiction, he knows that this metal hinge had been built after the original manufacture (after-market) of this vehicle. Upon further inspection of the center console area, ASP Trooper Bass discovered a hidden trap underneath the center console of the vehicle. This hidden trap ran from the radio dashboard area to the very back part of the center console. Inside this hidden trap, ASP Trooper Bass located a total of twenty-one (21) vacuum-sealed packages. Eight (8) of these packages were consistent in shape and weight to a kilogram brick. The other thirteen (13) packages were different in shape and weighed significantly less than the eight (8) kilogram bricks. Upon discovery of the suspected illegal drugs, GRANT and PINA were placed under arrest. Based on ASP Trooper Bass' training and experience specialized in interstate drug interdiction, he knows that illegal drugs are commonly transported inside hidden traps of vehicles. ASP Trooper Bass also knows drug traffickers commonly vacuum-seal drugs in packages in order to hinder law enforcement's efforts in discovering these hidden drugs.

12. GRANT and PINA were transported to the 12/21st Judicial Drug Task Force (JDTF) office for further processing. At the 12/21st JDTF office, a total weight of the twenty-one (21) packages of illegal drugs showed to weigh approximately 28.68 pounds. DEA TFO Paul Smith utilized a drug test-kit to conduct a test of the contents of one of the kilogram shaped bundles and one of the smaller packages of suspected illegal drugs. The test of both samples resulted in a positive reaction for the presence of cocaine.

13. ASP Trooper Bass relinquished custody of all packages of cocaine, **Cellular Telephone #1, Cellular Telephone #2, Cellular Telephone #3,** and **Cellular Telephone #4** to DEA TFO Smith at the 12/21st JDTF office. DEA TFO Smith processed and stored all packages of cocaine, **Cellular Telephone #1, Cellular Telephone #2, Cellular Telephone #3,** and **Cellular Telephone #4** in accordance with the 12/21st JDTF's policies and procedures regarding the storage of drug and non-drug evidence.

14. GRANT and PINA were both transported to the Crawford County Justice Center. GRANT and PINA were both charged with "*Trafficking of a Controlled Substance, Cocaine*" (Arkansas State Statute, 5-64-440).

**D.   SEARCH WARRANTS**

15. Based on the aforementioned, the United States has reasonable grounds to believe that the items described in Attachment A are relevant and material to the continuing criminal investigation of drug trafficking.

16. Based upon your Affiant's training, experience, and participation in this investigation, your Affiant respectfully submits the aforementioned facts to provide probable cause to believe that evidence of the crime and any other fruits and instrumentalities that appear to be used in furtherance of those crimes, are located within **Cellular Telephone #1, Cellular**

6

**Telephone #2, Cellular Telephone #3,** and **Cellular Telephone #4** (further described in Attachment A). The United States seeks authority to search and seize evidence from **Cellular Telephone #1, Cellular Telephone #2, Cellular Telephone #3,** and **Cellular Telephone #4** for evidence, fruits, or instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Cocaine), and Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances). Therefore, I respectfully request that the Court issue a search warrant for the items described in Attachment A to this Affidavit.

### E.     PHONES TO BE SEARCHED

17.     From training and by conducting numerous drug trafficking investigations, I am aware that traffickers of illegal narcotics frequently utilize cellular telephones to facilitate the purchase, transportation, and/or distribution of illegal narcotics. Specifically, I am aware the drug traffickers utilize multiple cellular telephones to communicate with co-conspirators during the transport of illegal narcotics to avoid detection and to differentiate between types of transactions, end-user and sources of supply. Furthermore, cellular telephones frequently contain names, text messages, voice mail messages, photographs, videos, and contact numbers for/of others involved in the distribution of illegal narcotics.

18.     Further, it is both my experience and the experience of other law enforcement officers I have spoken with, that a conspiracy to traffic narcotics generates various types of cellular telephone-related evidence. For example, the following types of evidence may be generated during the conspiracy: (1) telephone and direct contact numbers; (2) identifying information assigned to the device (including usernames, passwords and e-mail addresses); (3) call detail information (outgoing/incoming/missed calls); (4) internet protocol addresses accessed by the device or

7

accessing the device; (5) stored photographs, videos and text messages; (6) stored electronic mail, including attachments, and voice messages and other recordings; (7) web browsing history and any stored web pages; (8) stored documents and other files; (9) stored geo-location information; and (10) data stored in any application.

19. Based upon my training and experience, I also know that members of Drug Trafficking Organizations, including dealers, often use mobile phones to communicate with their narcotics source of supply and delivery recipients. Drug distributors often use SMS text messaging to communicate arrival and departure times, meeting places, details about narcotics, and details about other co-conspirators involved in the distribution of narcotics. Your Affiant has also observed drug distributors who photograph large sums of U.S. Currency and/or narcotics, which are then stored on the mobile device.

20. Based upon my training and experience, my review of documents and other relevant information I believe to be reliable, discussions with other law enforcement officers and the facts supporting probable cause set forth herein, I believe that evidence of the violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846 is presently located on or within the cellular telephone devices, described in Attachment A.

### F. TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with

other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Based on my training, experience, I know that the devices have capabilities that allow it to serve as a wireless telephone. I also know the device would allow to store text messages and digital images of, or related to, narcotics possession or distribution.

### G.     ELETRONIC STORAGE AND FORENSIC ANALYSIS

22.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

23.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a

paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence in analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a wireless telephone is evidence may depend on other information stored on the wireless telephone and the application of knowledge about how a wireless telephone operates. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on storage medium.

24.  Nature of examination. Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with this warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. Manner of execution. Because this warrant seeks only permission to examine a device that is already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Further your Affiant sayeth not.

*M. Brooks*

Michael Brooks, Special Agent
U.S. Drug Enforcement Administration

Sworn before me on this __4__ day of February, 2020.

*Mark E. Ford*

Honorable Mark E. Ford
United States Magistrate Judge

## ATTACHMENT A

1. One (1) black colored LG cellular telephone, model: LML212VL; IMEI: 355987104806731 (**Cellular Telephone #1**).

2. One (1) black colored Samsung cellular telephone, model: SM-J26071; IMEI: 356212106501068 (**Cellular Telephone #2**).

3. One (1) black colored Alcatel cellular telephone, model: A405DL; FCC ID: 2ACCJN023; misc: 015551000731716 (**Cellular Telephone #3**).

4. One (1) yellow colored iPhone XR (**Cellular Telephone #4**).

The cellular telephones described in Attachment A are currently stored as non-drug evidence at the 12/21st Judicial Drug Task Force office in Crawford County, Arkansas.

## ATTACHMENT B

1.  All records on the devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1) (Possess with Intent to Distribute Cocaine), and Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances), involving ROBERT LEE GRANT and DESTINY LELIA MARIE PINA, including:

2.  Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.  All documents, including all temporary and permanent electronic files, records, and photographs (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe a conspiracy to possess with intent to distribute a controlled substance or a conspiracy distribute a controlled substance, or the possession of a controlled substance or distribution of a controlled substance, as defined in 21 U.S.C. 841 and 846.

4.  User-attribution data to include data that reveals who used or controlled each device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.